Curran, Dennis J., J.
I.PROCEDURAL BACKGROUND
Dad Construction Co., Inc. brought claims for waste, destruction of property and negligence caused by eight Boston University students to a three-unit apartment building. The students countered with fourteen (14) affirmative defenses and six (6) counterclaims. They also filed a third-party complaint consisting of six counts, which, inter alia, sued the plaintiff corporation’s president individually. They removed this landlord-tenant dispute to the federal court. After a hearing, Judge Tauro promptly remanded the matter to the state court.
After a six-day jury trial, the plaintiff prevailed on 21 of 23 special verdict questions. Although the jury answered two questions in favor of the defendants, the plaintiff had conceded the issues involved in those two questions (regarding the defendants’ security deposit) well before this lawsuit was filed and indeed, at trial.
Presently before the court is the plaintiffs motion for attorneys fees and costs and the defendants’ cross motion to the same effect. The defendants have also filed a motion for recusal.
A hearing was held on all of these motions on March 29, 2007. For the reasons that follow, the motion for recusal is DENIED. The plaintiffs motion for attorneys fees and costs is ALLOWED, and the defendants’ motion is DENIED.
II.THE FACTS
On the eve of the 2001-2002 school year, the Chi Phi fraternity chapter at Boston University was evicted from university property. Desperate for housing, its members sought to rent a three-floor house from the plaintiff landlord, without disclosing either that they had just been evicted from another house or that they represented a fraternity. The parties entered into a one-year lease. A year-long “Animal House” atmosphere followed. The fraternity members and others trashed the entire house. Hundreds of people partied nearly every Thursday night through Sunday morning for nine months, from September until June. Neighbors complained; the police were regularly summoned; the landlord repeatedly admonished the students. He considered eviction proceedings, but feared that such judicial recourse would take too long and result in frivolous counterclaims. Thus, he determined to wait out the students until the end of the school year. All but two of the students did abandon the property after graduation in May; the others left within two months after that.
The students caused significant damage to the house. They pulled down ceilings and walls, yanked out electrical wiring, pulled doors off their hinges, and yanked kitchen cabinetry from the walls. Rotten food was left everywhere; vermin were a constant. The floors were caked with sticky dry beer. This was no ordinary college party aftermath; this was near-total property destruction.
The landlord sued the nine B.U. students and their lease-guarantee parents for property damage.
The students counterclaimed, alleging fraud, deceit, misrepresentation, unfair and deceptive practices, breach of the warranty of habitability, negligent failure to maintain the premises, violation of security deposit law and alter ego liability. They demanded a jury trial on all such triable issues.
Several months before trial, four of these same defendants filed another complaint in the Norfolk Superior Court (Docket No. 06-1418), Heimlich v. Friedfertig, against the plaintiff corporation’s president, individually. After a hearing, a Superior Court Judge found that the causes of action involved in both matters were the same, and sanctioned the defendants’ attorney, imposing $1,600 in costs upon him personally. She also dismissed the complaint.
In this action, discovery was contentious. At the pretrial conference, the defendants’ attorney predicted a “long trial.” Justice Brady issued a Scheduling Order to assess trial time requirements. Defense counsel planned to call 14 witnesses and estimated that he would require 17 to 18 hours to tiy his portion of the case. Judge Brady gave each side 10 hours.
In all, there were over 128 pleadings. Six pretrial court events occurred; the trial consumed six days.
On the Friday before trial, 18 of the 20 defendants settled. Two defendants, California resident Derek Heimlich, and his engineer/lawyer father, Alan, insisted upon their trial. After six days of trial, the jury found that Derek Heimlich had breached the lease, caused property damage and loss of income, wasted the premises, and breached a duty of care, as well as a duty of good faith and fair dealing. The jury awarded $18,200 in damages to the plaintiff.
III.THE DEFENDANTS MOTION FOR RECUSAL
The defendants ask this court to recuse itself on the parties’ motions for attorneys fees because “the defendants are appealing the judgment" and because various trial rulings were “unfair.”
Two reasons undercut such an effort. First, as to trial rulings, the defendants made no such claim until *232 well after the jury verdict was rendered against them; second, at oral argument on the present motion, the defendants’ attorney accused three other judges of bias in this case.
[TJhere were great problems with Judge Toro (sic)’s rulings as well.
sf: # sjs * * * * * sfc * * * * * *
The Courts feel that this case is a waste of time .. . [A]nd it’s not just related to your Honor. It’s related to other Judges that heard this [case] . . . (Tr. 18-19.)
I feel that the Court — not just your Honor, but every Judge has really heard the merits of this case just didn’t believe that it shouldn’t be this level of afight, and therefore, it shouldn't be in my courtroom. (Tr. 57.) (Emphasis added.)
Defense counsel specifically criticized federal judge Tauro, and two other Superior Court Justices. He offered this as to Judge Tauro:
. . . [Q]uite frankly, the reason why it was remanded, Your Honor, is because Judge Toro (sic) was not applying the law.
* * * * * * * * * * * * * * * * * sfc
[He] let attorney Maraño speak for 15 minutes. I wasn’t even allowed to speak. (Tr. 60.)
Now, Judge Toro (sic) deliberately chose to not apply the rules . . . (Tr. 60.)
He charged another Superior Court judge with inappropriate conduct as well:
[Judge D-] already granted $1,600 in sanctions [against me] * * * But it was done improperly. [Her ruling was] inappropriate as well . . . (Tr. 68.)
The plaintiffs attorney confirmed this procedural history:
[They play the] blame game for everything that happens to them.
They’re arguing Judge Toro (sic) [was] unfair to them, Judge B-[and] Judge D-were unfair to them (Tr. 9-10).
This case was tried over six days. In reflecting on it (see Commonwealth v. Eddington, 71 Mass.App. Ct. 138, 143-44 (2008)), this court finds no basis for recusal. Reduced to its essence, the defendants’ post-trial recusal attempt stems from one simple truth: they lost.
IV. MOTION FOR ATTORNEYS FEES
A. For the Plaintiff
Two reasons justify an award of fees for the plaintiff.
First, the lease required that the lessee pay the lessor attorneys fees in the event of a breach:
Lessees agree to pay any and all costs, including attorneys fees in any action involving the enforcement of [this1 lease or the terms thereof (See Lease Addendum, paragraph 19.)
Second, over two years before trial, on January 28, 2005, the plaintiff made an Offer of Judgment of $7,500 on the defendants’ counterclaims. Since the jury verdict rendered for the defendant/plaintiff in counterclaim was only $700, under Rule 68, the plaintiff is entitled to “all costs and expenses made after the offer was made.”
I have reviewed the 49 pages of itemized billing records submitted by the plaintiffs attomey. They are detailed and reasonable both in the scope of work and the time expended for the tasks performed. The time spent was appropriate and necessary. The billing records demonstrate hard work in bitterly-fought litigation, caused almost exclusively by defense counsel’s rather bizarre insistence upon a trial. Of the 695 hours worked, about 627 were rendered after the plaintiffs Offer of Judgment was proffered.
1. Reasonable Attorneys Fees
The basic measure of reasonable attorneys fees is a “fair market rate for the time reasonably spent preparing and litigating a case.” Killeen v. Westban Hotel Venture, LP, 69 Mass.App.Ct. 784, 790 (2007) citing Stowe v. Bologna, 417 Mass. 199, 203 (1994).
a. Time and Labor
The starting point in this inquiiy is to examine the amount of time reasonably expended on the case. Here, plaintiffs counsel’s billing records were detailed, properly descriptive, and complete. They also exhibited an economical use of time.
b. The Hourly Rate
A second consideration is the hourly rate. Plaintiffs counsel, a named partner in his own firm, usually bills at $300 an hour, a reasonable sum. Here, he reduced his hourly rate to $180.
We should also consider the factors detailed in Linthicum v. Archambault, 379 Mass. 381, 388, 389 (1979). The following sections address those factors.
c.Preclusion of Other Employment
This litigation was vigorously contested. There can be little doubt that plaintiffs counsel was forced to forego other case work.
d.Customary Fee for the Locality
Although no documentation has been submitted as to a customary local legal fee, the issue has been addressed in another Superior Court decision, Frank v. Fowler, Middlesex Superior Court Docket No. 02-1216 (Burnes, J.) (February 23, 2007), in which a $525 hourly rate at WilmerHale was determined to be reasonable. By comparison, I find that the billing rate of Attorney James V. Maraño of $300 is reasonable).[1] Indeed, defense counsel’s own hourly rate of $175 underscores the appropriateness of the plaintiff attorneys fee.
d. Amount Involved and Results Obtained
The plaintiff recovered $18,200; the defendants, $700. During the three-year pendency of this case, *233 plaintiff made repeated entreaties to settle this case. Indeed, the plaintiffs corporate President offered to settle the case with the defendants well before suit was even filed. The plaintiff s settlement offer was triple the amount of the defendants’ eventual jury verdict. The defendants spurned all settlement offers. Thus, although the plaintiffs attorneys fees would seem to be out of proportion to the results obtained in an “offensive” civil action, they were appropriate and necessary in defending against defendant’s multiple counterclaims and third-party complaint. The plaintiff achieved a complete victory in defending against these claims.
Two other factors demonstrate the reasonableness of the plaintiffs fee request: (1) the defendants made a settlement demand of $138,000 the day before trial; and (2) the defense counsel himself generated over $110,000 in legal bills to just these two defendants.
f.Time Limitations Imposed
The plaintiff attorney’s billing records evidence significant time expended after its Offer of Judgment was rejected. Such time was spent in what was basically, a defensive action and required the legal fee incurred.
g.The Nature and Length of the Attorney-Client Relationship
Attorney Marano’s affidavit indicates that the plaintiff and his law firm have had a longstanding relationship. As evidence of that relationship, his hourly billing rate was reduced by 40 percent.
h. Experience, Reputation and Ability of the Attorney
Attorney Maraño is a partner in Kushner & Maraño, P.C., and has been a member of the bar for about sixteen years. His practice focuses exclusively in civil litigation.
I have had the opportunity to assess attorney Marano’s trial advocacy skills, both written and oral. I believe that they are excellent. Moreover, his diligence is well apparent from the work product generated in behalf of the plaintiff. In short, I find that his conduct was, at all times, thoroughly professional.
i. Fixed or Contingency Fee
The legal fee to be charged the plaintiff was based on an hourly rate of service.
B. For the Defendants
The defendants claim they are entitled to attorneys fees on their $700 jury verdict. Their counsel states, by affidavit, that:

[Defendants] Heimlich have incurred actual attorneys fees in the amount of $111,243.13 directly related to defending the plaintiff’s claims against them and in prosecuting their claims against the plaintiff.

The Heimlichs were but two of twenty defendants. One wonders how much defense counsel billed the 18 other defendants — particularly in light of a jury verdict of only $700. Were the defendants led to believe that a Massachusetts landlord’s security deposit violation would result in a financial windfall? Were they exhorted to play litigation lottery?
There was no need for the defendants’ persistence in this lawsuit; correspondingly, there was and is no need for their attorneys fees. The defendants’ claims ought to be revealed for what they are: a transparent attempt to “run up” legal fees on what was, at its heart, a $2,100 claim. The security deposit law was not intended as a Full Employment for Attorneys’ Act; the defendants’ counsel’s motion must, therefore, be denied.
V. THE DEFENDANTS CHAPTER 93A CLAIMS
The defendants claim that the court ought to treble their award of $700 because G.L.c. 93A demands it. This is not so.
Here, the landlord did deposit the tenants’ security deposit into a bank account but failed to comply with the applicable accounting and reporting provisions. Indeed, the money remains untouched to this day. Given these facts and following the guidance afforded by Broadhurst v. Nader, 1998 Mass.App.Div. 104, I decline to treble the jury’s verdict.
ORDERS
For the foregoing reasons, the motion for recusal is DENIED.
The plaintiff Dad Construction Co., Inc.’s Emergency Motion for Attorneys Fees, Costs and Expenses is ALLOWED. The defendants’ Cross Motion for Attorneys Fees is DENIED. Further, the plaintiff did not violate G.L.c. 93A with regard to the security deposit issue.
Accordingly, judgment shall enter forthwith for the plaintiff and against the defendants Derek Heimlich and Alan Heimlich jointly and severally, in the amount of $18,200, the amount of the jury verdict, plus $124,338 for attorneys fees and $11,247 in expenses. Judgment shall enter for the defendants against the plaintiff in the amount of $700, the amount of the jury verdict on the counterclaims.
Finally, in an effort to further illuminate the issue of the reasonableness of the plaintiffs legal fees, I believe that it is appropriate to examine the total amount of legal charges incurred by each of the defendants in this action (obviously excluding the Heimlichs, since those records have already been furnished). Accordingly, it is further ORDERED that defense counsel shall, within ten days, produce the billing records for each of the following defendants (subject to redaction, of course, for any attorney-client communication or otherwise privileged material), to be accompanied by an affidavit by defense counsel summarizing the amounts billed to each such defendant, and the total amount of all such bills for all defendants:
Paul Levy;
Julia Levy;
*234 Arleigh B. Goodwin;
Peter Bornholdt;
Helen Bornholdt;
Frances Cos tan tino;
Paul Cosían tino;
Ian Heyworth Hill;
Cathleen Countryman;
David A. Fagerlie;
David L. Fagerlie;
Richard Peterson;
Linda Peterson;
Nathaniel Ulrich;
Richard Ulrich;
Brandon Cook;
Robert A. Cook;
Andrew Levy; and
Arleigh Goodwin.
Such records shall be sent to the attention of Assistant Clerk Catherine M. Brennan, c/o Clerk’s Office, Worcester Superior Court, 225 Main Street, Worcester, Massachusetts 01608.

 This hourly rate was reduced to $ 180.1 find that the $300 per hour figure was reasonable; inferentially, the $180 rate was appropriate as well.